IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ERIC STEWARD, by his next friend and mother, Lillian Minor, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GREG ABBOTT, Governor of the State of Texas, *et al.*, <br><br> Defendants. <br><br><br> THE UNITED STATES OF AMERICA, <br><br> Plaintiff-Intervenor, <br> v. <br><br> THE STATE OF TEXAS, <br><br> Defendant. | Case No.  SA-5:10-CV-1025-OG |

**THE UNITED STATES' MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

The United States files this Memorandum in Support of Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. In this Memorandum, the United States addresses two issues raised by Defendants in their motion to dismiss. First, Plaintiffs state a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Second, enforcement of the Medicaid Act, 42 U.S.C. § 1396, *et seq.*, is not limited to a federal government action to terminate funds.

## I. Plaintiffs State a Claim under Title II of the ADA.

Defendants have moved to dismiss Plaintiffs' Title II claims. In doing so, Defendants fundamentally mischaracterize the requirements of Title II and *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). A proper application of Title II and *Olmstead* shows that Plaintiffs state a claim under Title II of the ADA and that Defendants' motion to dismiss Plaintiffs' Second Amended Complaint should be denied.

Congress explicitly delegated to the Department of Justice the authority to promulgate regulations under Title II. 42 U.S.C. § 12134(a); 28 C.F.R. Part 35. Accordingly, the Department's regulations, guidance, and views are entitled to deference.[1] *See Olmstead*, 527 U.S. at 597-98 ("Because the Department [of Justice] is the agency directed by Congress to issue regulations implementing Title II, its views warrant respect.") (internal citation omitted); *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) ("[B]ecause Congress directed the Department of Justice (DOJ) to elucidate Title II with implementing regulations, DOJ's views at

---

[1] The Department's regulations under Title II are entitled to *Chevron* deference. *Ivy v. Williams*, 781 F.3d 250, 255 n.6 (5th Cir. 2015) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)). The Department's interpretative guidance under Title II is eligible for *Skidmore* deference. *Id.* at 256 n.7 (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)).

least would 'warrant respect' and might be entitled to even more deference.") (footnotes omitted).

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." *Id.* § 12101(a)(2). For these reasons, Congress prohibited discrimination against individuals with disabilities by public entities in Title II:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

*Id.* § 12132.

One form of discrimination prohibited by Title II of the ADA is violation of the "integration mandate." The integration mandate arises out of Congress's explicit findings in the ADA, the Attorney General's regulations implementing Title II, and the Supreme Court's decision in *Olmstead*, 527 U.S. at 587. The Attorney General's regulations implementing Title II provide that a "public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). The preamble discussion of the integration regulation explains that "the most integrated setting" is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. Part 35, App. B at 688 (2014). In *Olmstead*, the Supreme Court held that under Title II of the ADA, public entities are required to provide

community-based services to persons with disabilities when (a) such services are appropriate, (b) the affected persons do not oppose community-based treatment, and (c) community-based services can be reasonably accommodated, taking into account the resources available to the entity and the needs of other persons with disabilities. *Olmstead*, 527 U.S. at 607. Public entities can violate the integration mandate by utilizing "criteria or methods of administration . . . [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(3)(i).

In this case, Plaintiffs are qualified individuals with intellectual or developmental disabilities who are or will be in nursing facilities, and they sufficiently plead a violation of Title II of the ADA. Plaintiffs allege that they are individuals with disabilities. *See, e.g.*, Second Am. Compl., Dkt. # 173, ¶¶ 1, 243, 265, 331, 346, & 362. They allege that they are receiving care in segregated settings instead of community-based settings,[2] *see, e.g.*, *id.* ¶¶ 246, 251, 267, 336, 341, 351, 355, 364, & 372, and Defendants concede that several Named Plaintiffs continue to reside in nursing facilities, Defs.' Mot. Dismiss Pls.' Second Am. Compl. ("Defs.' Mot."), Dkt. # 244, at ECF 15-17 & 44. Plaintiffs allege that they do not oppose community-based treatment.

---

[2] Plaintiffs also allege that some Plaintiffs, living in the community, are at serious risk of returning to a nursing facility. *See* Second Am. Compl. ¶¶ 36 & 379. Individuals with disabilities need not wait until they are institutionalized to assert an integration claim under Title II of the ADA and its integration mandate. Title II of the ADA applies equally to individuals at serious risk of institutionalization. *See Pashby v. Delia*, 709 F.3d 307, 321-22 (4th Cir. 2013); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004) (ADA applied to individual at risk of entering nursing home); *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1181-82 (10th Cir. 2003) (same); *Pitts v. Greenstein*, No. 10-635-JJB-SR, 2011 WL 1897552, at *3 (M.D. La. May 18, 2011) ("A State's program violates the ADA's integration mandate if it creates the *risk* of segregation; neither present nor inevitable segregation is required."); *Marlo M. v. Cansler*, 679 F. Supp. 2d 635, 637-38 (E.D.N.C. 2010).

Second Am. Compl. ¶¶ 254, 275, 345, 361, & 376.[3]  Plaintiffs also assert that they are appropriate for community-based services. *See id.* ¶¶ 93, 94, & 379 (alleging that the representative plaintiffs and most of the putative class could be served in the community). Finally, Plaintiffs allege that the community-based services that they need could be reasonably accommodated. *See id.* ¶ 384.  As to all of these issues, the Second Amended Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs therefore meet the requirements to state an *Olmstead* claim.

In their motion, Defendants argue that to state a claim for violation of Title II's integration mandate, the state must have a "policy that makes services available in institutions but not in the community." Defs.' Mot. at 44.  In other words, Defendants appear to argue that an *Olmstead* claim can only be stated if there is a policy that there are *no* available services in the community.  Defendants misstate the *Olmstead* standard for two reasons.  First, states can violate Title II of the ADA through a combination of policies, practices, or procedures that result in unnecessary segregation; Plaintiffs are not required to allege the existence of a specific written policy that makes community services unavailable. *See* 28 C.F.R. § 35.130(b)(7) ("A public

---

[3] Defendants incorrectly argue that some Plaintiffs who are currently in nursing facilities do not have standing or cannot assert a claim because they oppose community-based treatment. *See* Defs.' Mot. at 15-16, 34-36, & n.44.  First, as Defendants concede, Plaintiff Maria Hernandez remains in a nursing facility despite her desire to return to the community, *see id.* at 15-16, and accordingly Plaintiffs' claims survive.  Moreover, as Plaintiffs note in their Response, Defendants' argument as to this issue is an improper attack on the merits of Plaintiffs' claim.  At this stage of the case, Plaintiffs have sufficiently alleged that Plaintiffs in nursing facilities do not oppose community-based treatment.

entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability . . . ."); *see also Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1319 (W.D. Wash. 2015) (holding that the plaintiff stated a claim by alleging a failure to conduct a required evaluation that would allow him to access community-based services); *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Connecticut*, 706 F. Supp. 2d 266, 277-78 (D. Conn. 2010) (holding that the plaintiffs stated a claim based on the state's methods of administration by alleging that defendants "failed to adequately assess and identify the long-term care needs of Plaintiffs . . . and to determine whether those needs could be appropriately met in integrated, community-based settings" and "failed to inform Plaintiffs . . . of the availability of alternatives to nursing home care and have denied them the right to choose home and community-based services instead of institutional care"); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 292 (E.D.N.Y. May 2008) ("Plaintiffs' allegations that individuals with mental illness are unnecessarily segregated in highly restrictive nursing homes, even though their needs could be met in a more integrated setting, and that these individuals desire to reside in a more integrated setting, are adequate to state violations of the ADA and Section 504 under *Olmstead* and meet *Twombly*'s plausibility standard.").

Second, while a state's provision of particular services in certain amounts or to certain people only in institutions is an *Olmstead* violation, *see Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1182 (10th Cir. 2003); *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004); *Townsend v. Quasim*, 328 F.3d 511, 513 (9th Cir. 2003), these practices or policies are only one type of *Olmstead* violation. As shown in *Olmstead* itself, where services are available to some individuals in the community, institutionalized plaintiffs can properly state a

claim if they have not received those services and thus remain in an institution, regardless of what a policy may say. *See Olmstead*, 527 U.S. at 593 (describing existing alternative community-based treatment programs that the plaintiffs could have been placed in while they were institutionalized). It is enough that the state provides Plaintiffs services in an institutional setting that is not the most integrated setting appropriate for Plaintiffs to demonstrate a violation of the integration mandate. *See id.* at 587, 593, & 598. Other courts, including in the very cases Defendants cite, have also found that an *Olmstead* claim can be stated when plaintiffs are denied existing services in the community. *See, e.g.*, *Radaszewski*, 383 F.3d at 609 ("[A] State may violate Title II when it refuses to provide an existing benefit to a disabled person that would enable that individual to live in a more community-integrated setting."); *see also Dunakin*, 99 F. Supp. 3d at 1319 (holding that plaintiff stated a claim under the ADA when he alleged that he was entitled to alternative community placement but was unable to access those services). Plaintiffs are not required to allege that services are only available in institutions, as long as they allege that they are unable to access community-based services to prevent institutionalization.

Here, Plaintiffs allege that they are currently institutionalized in segregated settings and that community-based services are unavailable to them because: (1) they have not been informed about alternatives to nursing facility placement, (2) they have not been appropriately assessed for community services, (3) they have not received discharge planning, and (4) the state plans, administers, and funds its community service system in a manner which fails to provide all qualified persons with intellectual and developmental disabilities with services in an integrated setting. Second Am. Compl. ¶¶ 248, 251, 253, 267, 269, 273, 274, 338, 341, 343, 344, 353, 355, 359, 360, 370, 372, 374, 375, & 379. They further allege that community placement is appropriate and that they do not oppose community placement. *Id.* ¶¶ 93, 94, 254, 275, 345, 361,

376, & 379. These allegations are sufficient to state a claim under Title II of the ADA and *Olmstead*. Defendants' motion to dismiss Plaintiffs' Title II claims should be denied.

## II. Enforcement of the Medicaid Act is Not Limited to the Secretary of the Department of Health and Human Services.

Defendants also seek to dismiss Plaintiffs' claims under the Medicaid Act, arguing, *inter alia*, that Plaintiffs have no rights to sue under the Medicaid Act because it only imposes obligations on the Secretary of Health and Human Services. Defs.' Mot. at 48-52. As the United States argued in its Statement of Interest, Dkt. # 43, enforcement of the Medicaid Act is not limited to the Secretary of the Department of Health and Human Services.

The Supreme Court has made clear that enforcement of legislation enacted pursuant to Congress' spending powers is not necessarily limited to a federal government action to terminate funds and that individuals may bring an enforcement action through 42 U.S.C. § 1983 under certain circumstances. *Blessing v. Freestone*, 520 U.S. 329, 348 (1997) (federal powers to "audit and cut federal funding" are insufficient to foreclose section 1983 remedies)[4]; *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-80 (2002); *see also Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 428 (1987) (the "authority to . . . cut off federal funds . . . [is] insufficient to indicate a congressional intention to foreclose § 1983 remedies"); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 522 (1987) (the authority to curtail federal funds is not "sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983"). The Fifth Circuit has similarly addressed this issue. *See*, *e.g.*, *Johnson v. Hous. Auth. of*

---

[4] In *Blessing*, the Supreme Court set forth a three-prong test for determining if Congress intended to create a right under section 1983: (1) "Congress must have intended that the provision in question benefit the plaintiff," (2) the right protected by the provision must not be "so 'vague and amorphous' that its enforcement would strain judicial competence," and (3) the provision must "unambiguously impose a binding obligation on the States." 520 U.S. at 340-41; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 282-83 (2002).

*Jefferson Parish*, 442 F.3d 356, 365-66 (5th Cir. 2006) (holding that HUD's authority to withhold funds from violators of the National Housing Act did not foreclose a section 1983 private remedy); *cf. S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 602-06 (5th Cir. 2004) (holding that the EPDST provision of the Medicaid Act gives rise to section 1983 remedies).

Contrary to Defendants' contention that section 1983 actions are unavailable solely because the Medicaid Act is Spending Clause legislation, remedies under section 1983 may only be categorically foreclosed if Congress expressly "forb[ids] recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 520 U.S. at 341 (citing *Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994)).  Nothing in the Medicaid Act expressly forecloses section 1983 remedies, and the Supreme Court has held that there is no "comprehensive enforcement scheme that is incompatible with individual enforcement" incorporated therein.  *See Wilder*, 496 U.S. at 521-22.  The Fifth Circuit is in accord.  *See generally S.D.*, 391 F.3d at 602-06 (holding that a private section 1983 right of action is available to enforce provisions of the Medicaid Act).

Since the Medicaid Act neither expressly nor impliedly forbids section 1983 remedies, Plaintiffs have recourse thereto if they can show that their claims satisfy the *Blessing/Gonzaga* three-factor test.

### III.     Conclusion

As stated above, Plaintiffs state a claim under Title II of the ADA, and Defendants' motion to dismiss their Title II claims should be denied.  Additionally, enforcement of the Medicaid Act is not limited to the Secretary of the Department of Health and Human Services, and Defendants' motion to dismiss should be denied as to that basis.

Dated:  December 21, 2015

FOR THE UNITED STATES:

        VANITA GUPTA
        Principal Deputy Assistant Attorney General
        Civil Rights Division

        EVE L. HILL
        Deputy Assistant Attorney General
        Civil Rights Division

        JUDY PRESTON
        Acting Chief
        Special Litigation Section

        BENJAMIN O. TAYLOE, JR.
        Deputy Chief
        Special Litigation Section


        <u>/s/ *Alexandra Shandell*</u>
        ALEXANDRA SHANDELL, Trial Attorney
        Admitted *pro hac vice*
        D.C. Bar No. 992252
        JESSICA POLANSKY, Trial Attorney
        Admitted *pro hac vice*
        New York Bar No. 4436713
        ELIZABETH C. KELLEY
        Virginia Bar No. 80255
        HALEY C. VAN EREM
        Florida Bar No. 106753
        Special Litigation Section
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue, N.W. - PHB
        Washington, D.C. 20530
        Telephone:  (202) 307-6123
        Facsimile:  (202) 514-6903
        alexandra.shandell@usdoj.gov

        *Counsel for the United States*

## CERTIFICATE OF SERVICE

  I hereby certify that on December 21, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

        /s/ *Alexandra Shandell*
        ALEXANDRA SHANDELL, Trial Attorney
        Admitted *pro hac vice*
        D.C. Bar No. 992252
        Special Litigation Section
        Civil Rights Division
        U.S. Department of Justice
        950 Pennsylvania Avenue NW - PHB
        Washington, DC  20530
        Telephone:  (202) 307-6123
        Facsimile:  (202) 514-6903
        alexandra.shandell@usdoj.gov