IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ERIC STEWARD, *et al.*, <br>     *Plaintiffs,* <br> v. <br><br> CECILE E. YOUNG, in her official capacity as the Executive Commissioner of Texas's Health and Human Services Commission, *et al.*, <br>     *Defendants.* <br><br> THE UNITED STATES OF AMERICA, <br>     *Plaintiff-Intervenor,* <br> v. <br><br> THE STATE OF TEXAS <br>     *Defendant.* | § § § § § § § § § § § § § § § § § § § § §    Case No. 5:10-CV-1025-OLG |

**DEFENDANTS' REPLY IN SUPPORT OF ITS
OBJECTIONS TO FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendants Cecile E. Young, in her official capacity as the Executive Commissioner of the Texas Health and Human Services Commission ("Commissioner") and the State of Texas file this reply in support of their objections to the Court's Findings of Fact and Conclusions of Law (Dkt. 717) ("the Findings").

### I.   INTRODUCTION

Plaintiffs correctly point out that no injunction is needed when it is impossible for a court to grant *meaningful* relief. *Chafin v. Chafin*, 568 U.S. 165, 172 (2023) (emphasis added). Any findings of fact or conclusions of law entered almost a decade after the close of evidence, eight years after trial, and three years after the court specifically requested updated data will not provide meaningful relief. The QSR that Plaintiffs suggest is outdated and is designed to have HHSC fail,

1

as HHSC's systems have been completely revamped since the trial. Even if an order took into account HHSC's 2022 advisory, which the Court specifically notes it did not consider in issuing the Findings, it would still not be sufficient as that information is now stale.

## II.     ARGUMENTS AND AUTHORITIES

Plaintiffs' response makes two critical errors. First, it side-steps the issue of just how stale the facts in this case are and how the current Findings cannot produce an order that will provide any meaningful relief. Second, it improperly shifts the burden of proof onto Defendants in direct contradiction of black letter law.

> A.  <u>Plaintiffs' response ignores the fact that Defendants' objections focus on the staleness of the facts, not the fact cutoff date itself</u>.

Plaintiff takes umbrage with Defendants' objections regarding the fact cutoff date. They spend several paragraphs discussing how the *original* fact cutoff date was determined *for trial*. But Defendants had no way of knowing that it would take another seven years after trial for the Court to reach its decision. Seven-year-old facts do not demonstrate the "ongoing violation of federal law" that Plaintiffs must show to obtain relief. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). Further, Plaintiffs ignore the glaring issue that is emphasized throughout Defendants' objections—that while the cutoff in 2017 may have been reasonable for trial, it is not reasonable to make a finding in 2025 that there is an ongoing violation of federal law based on information from no later than 2017. Nor is it reasonable to fail to consider updated information provided by HHSC in response to a request for supplemental briefing in 2022.

Plaintiffs' reliance on *Hudson v. Burke*, 913 F.2d 427 (7th Cir. 1990) is misguided. First, the gap of time between trial and the memorandum opinion issued in *Hudson* was only three years. Second, the facts of *Hudson* were always going to remain stagnant. In *Hudson*, several former city employees sued under 42 U.S.C. § 1983 for violations of their constitutional rights in connection

2

with their terminations. *Id*. at 428. The Seventh Circuit admonished the district court for its delays but noted that the established facts at trial complied with Federal Rule of Civil Procedure 52(a). *Id*. at 431.

Here, the facts could not remain stagnant like in *Hudson*. HHSC continued to provide services to individuals with IDDs. HHSC's policies and procedures continued to evolve. Since the trial of this matter, there have been a number of changes in leadership, including at the commissioner level. A court cannot determine what relief would be meaningful or even warranted if it is unaware of the *current* reality.

   B.  <u>Plaintiffs engage in egregious burden shifting.</u>

Plaintiffs' response impermissibly shifts the burden of proof onto Defendants. They state that "neither Defendants' Objections nor their 2022 Advisory demonstrate that Defendants are in compliance with federal law and that there is a durable remedy in place to prevent future violations of law." Dkt. 722 pg. 2. Plaintiffs make the erroneous argument that Defendants somehow had the burden of proof. Defendants merely showed the evidence of their processes.[1] The burden of proof always remained with Plaintiffs to establish that those processes were somehow inconsistent with federal law. To argue their burden shifting, Plaintiffs cite to *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc*., 528 U.S. 167 (2000) when stating that the defendants have a "formidable burden." Dkt 722 pg 6. However, the Court in *Laidlaw* was discussing the formidable burden of showing a case is moot. *Id.* at 190. Defendants here do not argue the affirmative defense of mootness—they contend the facts as they currently stand in 2025 do not support a finding of a violation of an ongoing obligation for a remedial order to be entered. Plaintiffs even make the

---

[1] Plaintiffs also incorrectly state that Defendants did not include data or statistical evidence of meaningful changes to HHSC's administration of services for individuals with IDD. A look at the evidence presented with the 2022 advisory shows this is inaccurate. *See* Dkt 700-1 ¶ 54, Exhibit D, Exhibit E, Exhibit G, Exhibit H, Exhibit I; Dkt. 700-2 ¶ 19; Dkt. 700-3 ¶ 5; Dkt. 700-4 ¶ 13, Exhibit B.

3

bizarre suggestion that the Court enter a potentially unnecessary remedial order so that Defendants can then demonstrate they are already in compliance with it. That gets it exactly backwards. If, as Plaintiffs appear to concede, Defendants may no longer be in violation of the law (at least in some areas), no remedial order is appropriate.

        C.      <u>Plaintiffs' response relinquishes their right to relief under the Medicaid Act.</u>

Following the Supreme Court's recent decision in *Medina v. Planned Parenthood South Atlantic*, 145 S.Ct. 2219 (2025), Plaintiffs appear to have (correctly) abandoned any attempt to obtain relief based on violations of the Medicaid Act's reasonable-promptness and freedom-of-choice provisions. Dkt. 722 at pp. 14-15 (referring to 42 U.S.C. §§ 1396a(a)(8), 1397n(c)(2)C)). Accordingly, the Court should enter no findings or conclusions based on those laws.

Plaintiffs err, however, in arguing that *Medina* has no impact on whether their NHRA claims can be brought under 42 U.S.C. § 1983. To create a right enforceable under § 1983, a statute must "'clear[ly] and unambiguous[ly]' use[] 'rights-creating terms.'" *Medina*, 145 S.Ct. at 2229 (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 290 (2002)). In *Health & Hosp. Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), the Supreme Court found two enforceable rights in the NHRA, 42 U.S.C. § 1396r(c), which concerned "[r]equirements relating to residents' rights." The specific provisions themselves referred to a resident's "right to be free" from certain restraints and "discharge and transfer rights" of a resident. 42 U.S.C. § 1396r(c)(1)(A)(ii), (c)(2). Concluding this was "rights-creating" language, the Court held the statutes enforceable.

But the portion of the NHRA upon which Plaintiffs rely (at Dkt. 717 ¶¶ 1506-16) does not create enforceable rights. *See* 42 U.S.C. § 1396r(e)(7). Rather than using rights-creating language, section 1396r(e) describes what a State must provide "[a]s a condition of approval of its plan under this subchapter." And subsection (e) contains its own remedy—the denial of payment when a

PASRR is not performed. §1396r(e)(7)(D)(i). Further, subsection (h) provides for enforcement by the federal government if subsection (e) is not complied with. Following *Medina*, Plaintiffs have not identified an enforceable right under the NHRA that the State has allegedly violated.

## CONCLUSION

As set out in Defendants' Objections (Dkt. 719), the evidence relied on the Findings cannot support an injunction because they cannot show an ongoing violation of federal law. Similarly, the evidence relied on in the Findings does not support Plaintiffs' request to appoint an expert to assist the Court in crafting injunctive relief.

Therefore, that the Court should sustain Defendant's Objections in full and refrain from issuing a remedial order or order appointing an expert as requested by Plaintiffs.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

*/s/ Stephanie A. Criscione Houser /s/*
KIMBERLY GDULA
Chief
State Bar No. 24052209
STEPHANIE A. CRISCIONE HOUSER
Assistant Attorney General
State Bar No. 24109768
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2120
FAX: (512) 320-0667
kimberly.gdula@oag.texas.gov

stephanie.criscione@oag.texasgov
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/ Stephanie A. Criscione Houser /s/*
STEPHANIE A. CRISCIONE HOUSER